UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF
TENNESSEE _____ DIVISION

ERNEST A. SOUTHALL,          )
    PLAINTIFF,               )
                             )
                             )   CIVIL NO._____
                             )   COMPLAINT AND
    V.                       )   JURY TRIAL DEMAND
                             )
                             )
USF HOLLAND, INC.,           )
    DEFENDANT.               )
                             )

COMES NOW, the Plaintiff, Mr. Ernest A. Southall (hereinafter referred to as "Mr. Southall"), by the undersigned counsel and files this Compliant based upon the allegations below.

## INTRODUCTION

1. This is an action to remedy the Plaintiff's right against disability discrimination under (1) the American Disabilities Act of 1990, as amended, Title 42 United States Code Section 12101 et seq.; (2) the Tennessee Human Rights Act, Tennessee Code Annotated Section 4-21-101 et seq.; (3) the Tennessee Disability Act, Tennessee Code Annotated Section 8-50-103 et seq.; (4) the Tennessee Public Protection Act, Tennessee Code Annotated Section 50-1-304; (5) the common law of intentional infliction of emotional distress; and (6) the common law of negligent infliction of emotional distress.

## JURISDICTION & VENUE

2. This Honorable Court holds jurisdiction pursuant to (1) Title 28 United States Code Section 1331, (2) Title 28 United States Code Section 1337, (3) Title 28 United States Code Section 1343, (4) Title 42 United States Code Section 12117, and (5) Title 42 United States Code Section 2000e-5.

3. This Honorable Court further holds supplemental jurisdiction over related state and local causes of actions pursuant to Title 28 United States Code Section 1367 and the Federal Rule of Civil Procedure 18.

4. Venue is proper pursuant to Title 28 United States Code Section 1391.

5. The causes of actions occurred within Davidson County, Tennessee.

## PARTIES

6. Mr. Southall resides in Davidson County, Tennessee.

7. The Defendant, USF Holland, Inc. (hereinafter referred to as "Holland"), is a Michigan Corporation who does business in the State of Tennessee.

8. Holland's principal office is located at MS A515, 10990 Roe Avenue, Overland Park, Kansas 66211-1213.

9. Holland's registered agent is CT Corporation System, 800 Gay Street, Suite 2021, Knoxville, Tennessee 37929-9710.

10. Mr. Southall was an employee of Holland within the meaning of (1) the American Disabilities Act of 1990, as amended, Title 42 United States Code Section 12111(4); and (2) the Tennessee Public Protection Act, Tennessee Code Annotated Section 50-1-304(a)(1)(B).

11. Holland is an employer within the meaning of (1) the American Disabilities Act of 1990, as amended, Title 42 United States Code Section 12111(5); (2) the Tennessee Human Rights Act, Tennessee Code Annotated Section 4-21-102(5); (3) the Tennessee Disability Act, Tennessee Code Annotated Section 8-50-103(d); and (4) the Tennessee Public Protection Act, Tennessee Code Annotated Section 50-1-304(a)(2)(B).

12. Mr. Southall has been diagnosed with a disability, sleep apnea, within the meaning of (1) the American Disability Act of 1990, as amended, Title 42 United States Code Section 12102 and (2) the Tennessee Human Rights Act, Tennessee Code Annotated Section 4-21-101(3)(A)(i)-(iii).

## PROCEDURAL REQUIREMENTS

13. Mr. Southall satisfied all procedural requirements with respect to the United States Equal Employment Opportunity Commission (Please see attached Exhibit A.).

## FACTS

14. On or about November 8, 1999, Mr. Southall began working for Holland.

15. From 2010 to 2011, Mr. Southall was permitted to perform alternate work when he injured his arm.

16. On July 10, 2013, Mr. Southall was originally given a Concentra (hereinafter referred to as "Concentra") Medical Examiner's Certificate that was set to expire on December 20, 2014.

17. On July 10, 2013, Mr. Southall was in the process of leaving Concentra when he was called back to the examination room.

18. On July 10, 2013, Mr. Southall was told by Concentra that he looked like a prime suspect for sleep apnea.

19. On July 10, 2013, Mr. Southall's neck size was measured by Concentra as being seventeen (17) inches, which placed him at risk for having sleep apnea.

20. On July 10, 2013, Mr. Southall challenged the neck measurement.

21. On July 10, 2013, Mr. Southall's Concentra Medical Examiner's Certificate expiration date was changed from December 20, 2014 to December 20, 2013.

22. In August of 2013, Mr. Southall was diagnosed with having sleep apnea and was required to wear a continuous positive airway pressure device.

23. On September 3, 2013, Mr. Southall was provided a Mirage SoftGel nasal mask-Large by the Department of Veterans Affairs.

24. On September 3, 2013, Mr. Southall's continuous positive airway pressure was set from 5cm to 15cm.

25. On October 9, 2013, Mr. Southall's Medical Examiner's Certificate was extended to November 10, 2013 by Concentra due to sleep apnea.

26. On November 8, 2013, Mr. Southall was disqualified to drive by Concentra due to sleep apnea.

27. Between November 8, 2013 and November 22, 2013, Holland made no reasonable accommodations for Mr. Southall to perform alternate work due to the sleep apnea disability, even though accommodations were made for other employees.

28. On November 15, 2013, Mr. Southall returned to Concentra to show one (1) week's worth of continuous positive airway pressure usage.

29. On November 15, 2013, Concentra stated that Mr. Southall was not given a Medical Examiner's Certificate based upon the Department of Transportation's minimum requirements.

30. On November 15, 2013, the Department of Transportation did not have minimum requirements in place for the continuous positive airway pressure machine.

31. From November 17, 2013 through November 21, 2013, the ResScan Software showed Mr. Southall's usage as being eighty percent (80%).

32. On November 22, 2013, the continuous positive airway pressure data showed Mr. Southall's usage as being eighty percent (80%).

33. On November 22, 2013, Concentra provided Mr. Southall with a two (2) week Medical Examiner's Certificate that expired on December 6, 2013.

34. On November 29, 2013, the continuous positive airway pressure data showed Mr. Southall as being less than seventy percent (70%).

35. On December 9, 2013, Concentra provided Mr. Southall with a two (2) week Medical Examiner's Certificate that expired on December 20, 2013.

36. On December 19, 2013, Concentra provided Mr. Southall with a Medical Examiner's Certificate that expired on February 8, 2014.

37. From December 1, 2013 through December 9, 2013, the continuous positive airway pressure data indicated seventy-five percent (75%) usage.

38. From December 22, 2013 through January 1, 2014, the continuous positive airway pressure data indicated seventy-two percent (72%) usage.

39. From December 28, 2013 through January 8, 2014, Holland did not permit Mr. Southall to work due to the sleep apnea

Page 4 of 17

disability, even though Mr. Southall had a current Medical Examiner's Certificate.

40. On January 24, 2014, Mr. Southall filed an Information of Complaint or Grievance with the union against Holland because it would not permit him to work because of his sleep apnea condition.

41. On February 10, 2014, Concentra did not extend Mr. Southall's Medical Examiner's Certificate because Concentra needed seventy percent (70%) usage on the continuous positive airway pressure machine.

42. From February 10, 2014 through February 23, 2014, Holland made no reasonable accommodations for Mr. Southall to perform alternate work due to the sleep apnea disability, even though accommodations were made for other employees.

43. On February 24, 2014, Mr. Southall was provided with a two (2) month Medical Examiner's Certificate by Concentra that expired on April 24, 2014.

44. From February 24, 2014 through February 25, 2014, Holland did not permit Mr. Southall to work due to the sleep apnea disability, even though Mr. Southall had a current Medical Examiner's Certificate.

45. On April 24, 2014, Mr. Southall was provided with a Medical Examiner's Certificate that expired on July 10, 2014.

46. On April 24, 2014, the continuous positive airway pressure data indicated that Mr. Southall had fifty-seven percent (57%) usage.

47. On April 24, 2014, Mr. Southall's mask was changed back to the Mirage SoftGel nasal mask.

48. From May 1, 2014 through July 9, 2014, the continuous positive airway pressure data indicated that Mr. Southall had eight percent (8%) usage.

49. From June 1, 2014 through September 4, 2014, the continuous positive airway pressure data indicated that Mr. Southall had a thirty-five percent (35%) usage.

50. From July 9, 2014 through July 20, 2014, Mr. Southall's continuous positive airway pressure card data showed seventy-five percent (75%) usage.

51. On July 10, 2014, Concentra measured Mr. Southall's neck size as being seventeen (17) inches.

52. On July 10, 2014, Concentra indicated that Mr. Southall weighed two hundred twenty three (223) pounds with a body mass index of thirty one point six (31.6).

53. From July 11, 2014 through July 20, 2014, Mr. Southall did not have a Medical Examiner's Certificate.

54. From July 11, 2014 through July 20, 2014, Holland made no reasonable accommodations for Mr. Southall to perform alternate work due to the sleep apnea disability, even though accommodations were made for other employees.

55. On July, 21, 2014, Mr. Southall was given a one (1) month Medical Examiner's Certificate that expired on August 21, 2014.

56. From July 21, 2014 through August 18, 2014, Mr. Southall showed a thirteen percent (13%) usage on the ResScan Software.

57. On August 19, 2014, Holland sent an email to Concentra regarding Mr. Southall.

58. On August 19, 2014, Holland wanted to know the reason that Mr. Southall was not being issued a Medical Examiner's Certificate for longer than one (1) month.

59. On August 19, 2014, Holland further stated in the email that Concentra should disqualify Mr. Southall if he is not meeting the requirements, as opposed to issuing one (1) month cards.

60. On August 19, 2014, Holland further stated in the email that Mr. Southall should be coming to Concentra either today or tomorrow.

61. On August 19, 2014, Concentra refused to provide Mr. Southall with another Medical Examiner's Certificate due to alleged compliance concerns with the continuous positive airway pressure machine.

62. On August 19, 2014, Concentra further stated that Holland had reported that Mr. Southall had been witnessed falling asleep at work.

63. On August 19, 2014, Concentra further stated that Mr. Southall had to provide ninety (90) days of compliance with the continuous positive airway pressure machine.

64. On August 19, 2014, Concentra further stated that Holland had requested the ninety (90) day compliance with the continuous positive airway pressure machine.

65. On August 19, 2014, Concentra further stated that Holland could request additional compliance.

66. On August 19, 2014, Mr. Southall told Concentra that he has been having problems with his mask.

67. On August 19, 2014, Concentra repeatedly said that the Department of Transportation's regulations required that Mr. Southall follow the sleep apnea rules.

68. On August 19, 2014, no ninety (90) day compliance requirement for the continuous positive airway pressure machine was a part of the law.

69. On August 19, 2014, Concentra's medical records indicated that a voicemail message was left for Holland.

70. On August 22, 2014, Mr. Southall showed proof of seventy-one percent (71%) usage.

71. On August 22, 2014, Mr. Southall was issued another type of mask by the Department of Veterans Affairs, Mirage Quattro full face mask.

72. From August 19, 2014 through December 1, 2014, Holland made no reasonable accommodations for Mr. Southall to perform alternate work due to the sleep apnea disability, even though accommodations were made for other employees.

73. From August 19, 2014 through December 1, 2014, Mr. Southall did not receive any compensation from Holland.

74. On August 26, 2014, Mr. Southall told Concentra that he has been having problems with his continuous positive airway pressure mask and leakage.

Page 7 of 17

Case 3:15-cv-01266   Document 1   Filed 11/17/15   Page 7 of 17 PageID #: 7

75. On August 26, 2014, Concentra told Mr. Southall that the ninety (90) day compliance requirement could not be shortened due to the Department of Transportation's regulations.

76. On August 26, 2014, no ninety (90) day compliance requirement for the continuous positive airway pressure machine was a part of the law.

77. On August 29, 2014, Mr. Southall filed an Information of Complaint or Grievance with the union against Holland because Holland was not permitting Mr. Southall to work due to sleep apnea.

78. On September 3, 2014, Mr. Southall was seen by a sleep specialist.

79. On September 5, 2014, Mr. Southall was told by Concentra that Holland was contacted to confirm that Mr. Southall was an employee.

80. On September 5, 2014, Mr. Southall was further told by Concentra that Holland has alternate work for Mr. Southall to perform that does not involve driving.

81. On September 5, 2014, Mr. Southall told Concentra that Holland has not permitted him to perform any alternate work.

82. On September 17, 2014, a sleep study was performed on Mr. Southall at Skyline Medical Center.

83. In or about September of 2014, the sleep specialist changed Mr. Southall's mask to a White Zest nasal mask with C-Flex 2 and chin strap.

84. In or about October of 2014, the sleep specialist changed Mr. Southall's continuous positive airway pressure to 10cm H20 and minimum of 6cm H20 with heated humidity.

85. In October 29, 2014, Mr. Southall was cleared by a sleep specialist.

86. From September 3, 2014 through October 19, 2014, Mr. Southall's ResMed AirView showed eighty nine percent (89%) usage.

Page 8 of 17

Case 3:15-cv-01266   Document 1   Filed 11/17/15   Page 8 of 17 PageID #: 8

87. From September 2, 2014 through November 30, 2014, Mr. Southall's ResMed AirView showed ninety three percent (93%) usage.

88. From September 30, 2014 through October 29, 2014, Mr. Southall's ResMed AirView showed ninety seven percent (97%) usage.

89. On or about October 20, 2014, Mr. Southall showed proof of the eighty-nine percent (89%) usage to Concentra.

90. On December 1, 2014, Mr. Southall was provided a Medical Examiner's Certificate that expired on July 10, 2015.

91. On July 10, 2015, Mr. Southall was given a one (1) year Medical Examiner's Certificate by Concentra.

92. On July 10, 2015, Concentra measured Mr. Southall's neck as being sixteen point five (16.5) inches.

93. On July 10, 2015, Concentra indicated that Mr. Southall weighed two hundred thirty three (233) pounds with a body mass index of thirty-three point seven (33.7).

94. On or about July 16, 2015, Mr. Southall received a termination letter from Holland for alleged dishonesty.

95. In July of 2015, Mr. Southall filed an Information of Complaint or Grievance with the union against Holland for being discharged for alleged dishonesty.

96. During the week of September 14, 2015, the Southern Region Multi-state Grievance Committee ruled that Mr. Southall could return to work.

97. During the week of September 14, 2015, the Southern Region Multi-state Grievance Committee imposed no other conditions upon Mr. Southall's return to work.

98. Holland has not permitted Mr. Southall to return to work.

99. From July of 2015 to the present, Holland has made no reasonable accommodations for Mr. Southall to perform alternate work due to the sleep apnea disability, even though accommodations were made for other employees.

100. On October 8, 2015, Mr. Southall learned from Holland that Concentra telephoned Holland to report that he and his friend were upset when they learned that a Medical Examiner's Certificate would not be provided.

101. On October 8, 2015, Mr. Southall further learned from Holland that Concentra telephoned Holland to report that Ms. Southall's friend returned to Concentra to speak about him.

102. On October 8, 2015, Mr. Southall further learned from Holland that Holland employees witnessed Mr. Southall sleeping.

103. On October 8, 2015, Mr. Southall further learned from Holland that its employees would laugh at him as he slept.

104. On October 8, 2015, Mr. Southall further learned from Holland that Concentra was contacted and asked the reason that Mr. Southall could not get a Medical Examiner's Certificate like everyone else.

105. On or about October 14, 2015, Holland sent a letter stating that Mr. Southall had ninety six (96) hours to report for work.

106. On October 19, 2015, Mr. Southall reported to Holland for his job assignment, but Holland refused to permit him to work.

107. On or about November 5, 2015, Holland sent a letter stating that Mr. Southall had abandoned his job and was being removed from the seniority list.

108. On or about November 10, 2015, Mr. Southall filed an Information of Complaint or Grievance with the union against Holland.

109. Upon information and belief, Holland has not demanded that any other employee with sleep apnea who holds a valid Medical Examiner's Certificate submit to another physical before the expiration date.

110. In 2014, Mr. Southall was contacted regarding dismissing the U.S. Equal Employment Opportunity Commission claim that Mr. Southall filed against Holland.

111. In 2014, Mr. Southall was further told that back pay would be received in exchange for Mr. Southall dismissing the U.S. Equal Employment Opportunity Commission claim against Holland.

112. In 2014, Mr. Southall declined Holland's offer.

113. Mr. Southall's home was lost and most of the belongings therein during the time that he was being taken off work due to sleep apnea.

AMERICAN DISABILITIES ACT OF 1990, AS AMENDED

114. Mr. Southall re-alleges and reincorporates by reference all allegations set forth in the preceding paragraphs as if set forth herein.

115. Holland through its agents, representatives, and employees intentionally, willfully, and knowingly discriminated and retaliated against Mr. Southall in violation of the American Disabilities Act of 1990, as amended (hereinafter referred to as the "American Disabilities Act"), Title 42 United States Code Section 12101 et seq., in connection with Mr. Southall's wrongful terminations.

116. Holland through its agents, representatives, and employees intentionally, willfully, and knowingly discriminated and retaliated against Mr. Southall in violation of the American Disabilities Act in connection with being unwilling to make reasonable accommodations for Mr. Southall, since accommodations were made for similarly situated employees.

117. Mr. Southall seeks injunctive relief to remedy Holland's wrongdoings on the basis that no other adequate remedy at law is available to redress the discriminatory practices of Holland.

118. Holland's acts and or omissions constitute a violation of the American Disabilities Act.

119. Holland's American Disabilities Act violations caused Mr. Southall to suffer substantial harm and damages, including loss of income and benefits, humiliation, mental anguish, embarrassment, and emotional distress harm.

## TENNESSEE HUMAN RIGHTS ACT

120. Mr. Southall re-alleges and reincorporates by reference all allegations set forth in the preceding paragraphs as if set forth herein.

121. Holland's actions constituted unlawful discriminatory practices as contemplated in the Tennessee Human Rights Act, Tennessee Code Annotated Section 4-21-101 et seq..

122. Mr. Southall and Holland is a "person" as defined by the Tennessee Human Rights Act, Tennessee Code Annotated Section 4-21-102.

123. Holland discriminated against Mr. Southall in violation of the Tennessee Code Annotated Section 4-21-401 et seq. due to his sleep apnea diagnosis as he was denied employment privileges afforded to other persons.

124. Holland's discriminatory classification of Mr. Southall's sleep apnea adversely affected Mr. Southall's status as an employee, according to the Tennessee Code Annotated Section 4-21-101 et seq..

125. Holland engaged in a knowing and intentional pattern of discrimination by directing Concentra, its employees, its agents, and its representatives to keep Mr. Southall from working because of the sleep apnea condition.

126. Holland engaged in a knowing and intentional pattern of discrimination by not making reasonable accommodations for Mr. Southall, even though Holland had made reasonable accommodations for other employees.

## Tennessee Disability Act

127. Mr. Southall re-alleges and reincorporates by reference all allegations set forth in the preceding paragraphs as if set forth herein.

128. Holland discriminated against Mr. Southall as contemplated by the Tennessee Disability Act, Tennessee Code Annotated Section 8-50-103 et seq..

129. Mr. Southall was able to perform the essential functions of the job with sleep apnea.

130. Holland subjected Mr. Southall to adverse employment actions as contemplated by the Tennessee Disability Act on the basis of Mr. Southall's sleep apnea diagnosis by: (1) directing Concentra, a medical provider, to remove Mr. Southall from work for ninety (90) days; (2) by not permitting Mr. Southall to work with a current Medical Examiner's Certificate; (3) subjecting Mr. Southall to taunting as he slept;(4) failing to make reasonable accommodations for Mr. Southall to perform other non-driving jobs; and (5) retaliating against Mr. Southall for pursing his U.S. Equal Employment Opportunity Commission claim.

## TENNESSEE PUBLIC PROTECTION ACT

131. Mr. Southall re-alleges and reincorporates by reference all allegations set forth in the preceding paragraphs as if set forth herein.

132. Holland is involved in illegal activates that violates the laws that are intended to protect the public health, safety, and welfare pursuant to the Tennessee Public Protection Act, Tennessee Code Annotated Section 50-1-304.

133. Mr. Southall was discharged solely for refusing to remain silent about Holland's illegal treatment of him due to being diagnosed with sleep apnea.

134. Mr. Southall would further state that Holland's reason for discharging him, dishonesty, is a pretext for unlawful retaliation.

135. Mr. Southall would further state that Holland's later reason for discharging him, job abandonment, is also a pretext for unlawful retaliation.

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

136. Mr. Southall re-alleges and reincorporates by reference all allegations set forth in the preceding paragraphs as if set forth herein.

137. Holland's conduct as described above resulted in negligent infliction of emotional distress.

138. Holland had a duty to protect Mr. Southall from workplace discrimination.

139. Holland breached that duty by acting as Mr. Southall's medical provider.

140. Holland further breached that duty by directing Concentra to remove Mr. Southall from work due to his sleep apnea diagnosis for ninety (90) days.

141. Holland further breached that duty by permitting an abusive workplace environment whereby employees jeered at Mr. Southall because of his sleep apnea condition.

142. Holland further breached that duty by not making reasonable accommodations for Mr. Southall to perform non-driving work.

143. Holland further breached that duty by permitting retaliation against Mr. Southall.

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

144. Mr. Southall re-alleges and incorporates by reference all allegations set forth in the preceding paragraphs as if set forth herein.

145. Holland's conduct as described above resulted in the intentional infliction of emotional distress against Mr. Southall.

146. Holland had a duty to protect Mr. Southall from discriminatory and retaliatory behavior.

147. Holland's breached that duty when it engaged in discriminatory and retaliatory conduct against Mr. Southall.

148. Holland's discriminatory and retaliatory behavior resulted in loss wages, embarrassment, and humiliation.

149. Holland's actions were intentional.

150. Holland's actions were so outrageous as not to be tolerated in civilized society.

151. Holland's conduct has resulted in serious mental injury and suffering to Mr. Southall.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, Mr. Southall, prays that a judgment be rendered herein in his favor and against the Defendant, Holland, as listed below.

1. Mr. Southall is requesting that process be issued and served upon Holland.

2. Mr. Southall is further requesting that this Honorable Court empanel a jury to hear this cause.

3. Mr. Southall is further requesting that this Honorable Court order Holland to make him whole by compensating him for pecuniary losses, including, but not limited to appropriate lost earnings and insurance premiums, back pay, front pay, pre-judgment interest, in amounts to be proved at trial, and other affirmative relief necessary to eradicate the effects of Holland's unlawful employment practices.

4. Mr. Southall is further requesting any costs associated with seeking new employment if reinstatement is not practicable.

5. Mr. Southall is further requesting that this Honorable Court make him whole by providing compensation for non-pecuniary losses, including emotional pain, suffering, inconvenience, and mental anguish in amounts to be proven at trial.

6. Mr. Southall is further requesting punitive damages in amounts to be proven at trial.

7. Mr. Southall is further requesting appropriate injunctive and declaratory relief, including a permanent injunction enjoining Holland, its employees, its agents, its officers, its successors, its assigns, and all persons in active concert or participation with it from engaging in disability discrimination and retaliation.

8. Mr. Southall is further requesting that the injunction be extended to cover any other employment practice by Holland which discriminates on the basis of disability.

Page 15 of 17

Case 3:15-cv-01266   Document 1   Filed 11/17/15   Page 15 of 17 PageID #: 15

9. Mr. Southall is further requesting that Holland, its employees, its agents, its officers, its successors, its assigns, and all persons in active concert or participation with it be ordered to institute and carry out policies, practices, and programs, which provide equal employment opportunities to victims of disability discrimination.

10. Mr. Southall is further requesting court costs, including any discretionary costs.

11. Mr. Southall is further requesting an award of reasonable attorney's fees.

12. Mr. Southall is further requesting such other relief that he may be entitled to receive.

13. Mr. Southall is further requesting such other relief as this Honorable Court may deem appropriate.

JURY DEMAND

Plaintiff, Mr. Ernest A. Southall, demands a jury for all claims stated herein.

Respectfully submitted,

s/Gina Crawley
Gina Crawley
Tenn. Sup. Ct. No. 026256
Law Office of GRC
P.O. Box 40265
Nashville, Tennessee 37204
615-829-1392 (telephone no.)
grclawoffice@gmail.com (e-mail)

CERTIFICATE OF SERVICE

The undersigned hereby certifies that the Complaint has been served via certified United States mail upon CT Corporation System, 800 Gay Street, Suite 2021, Knoxville, Tennessee 37929-9710 on this the 18th day of November, 2015.

s/Gina Crawley

VERIFICATION

State of Tennessee
County of Davidson

I, Ernest A. Southall, being first duly sworn, makes oath that he has read the foregoing Complaint, know the contents thereof, and that the same is true and correct to the best of his knowledge, information, and belief.

*Ernest A. Southall* (signature)
Mr. Ernest A. Southall

Sworn to and subscribed before me this the 15th day of November, 2015.

*Virginia Crawley* (signature)
Notary Public

*March 8, 2016*
My Commission Expires

[Notary Seal: VIRGINIA A. CRAWLEY, STATE OF TENNESSEE, NOTARY PUBLIC, COUNTY OF DAVIDSON]